**STATE OF WEST VIRGINIA**

**FILED**

*In re* B.M.

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 20-0440** (Kanawha County 19-JA-619)

**MEMORANDUM DECISION**

Petitioner Mother E.G., by counsel Timbera C. Wilcox, appeals the Circuit Court of Kanawha County's April 8, 2020, order terminating her parental rights to B.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect case against petitioner. Specifically, the DHHR alleged that petitioner was arrested after she overdosed on drugs in her driveway and was subsequently revived by first responders. At the time of the overdose, law enforcement officers found the child asleep in the home with heroin on the nightstand next to the bed where she was sleeping. The DHHR also alleged that petitioner had an extensive history of Child Protective Services ("CPS") interventions due to her drug abuse. According to the DHHR, petitioner was provided services in 2010 when B.M. was born with drugs in her system. Petitioner sufficiently complied with those services and no child abuse and neglect petition was filed against her. However, a child abuse and neglect petition was filed against petitioner regarding B.M. in 2016 due to her substance abuse. In that case, petitioner was able to successfully complete an

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

improvement period, and the child was returned to her care.[2] In sum, in the most recent petition, the DHHR alleged that petitioner's substance addiction affected her ability to adequately parent the child. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in November of 2019. Petitioner stipulated to the allegations contained in the petition. Specifically, petitioner admitted that on the day of her overdose she took "two to three hits off of a blunt" and "did a line of heroin[]." Petitioner further admitted that her judgment was impaired, and that the child was under her care, custody, and control that day. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court also took judicial notice of the 2016 child abuse and neglect case, as well as the criminal charges relating to that case.

The circuit court held an initial dispositional hearing in January of 2020. The DHHR presented the testimony of Barbara Nelson, a licensed psychologist. Ms. Nelson testified that she performed a psychological evaluation of petitioner, and Ms. Nelson opined that petitioner's prognosis for attaining minimally adequate parenting was "extremely poor." Ms. Nelson testified that petitioner failed to adequately accept responsibility for her actions. While petitioner claimed to acknowledge her drug abuse, she "continued that same behavior over the course of three cases and received services." Ms. Nelson further asserted that petitioner "has never benefited" from services or her opportunities to attain sobriety. Ms. Nelson stated that she asked petitioner whether she was willing to attend a long-term rehabilitation program, and that petitioner responded that she was not willing. According to Ms. Nelson, the outpatient treatment program petitioner had been attending during the proceedings had not begun tapering petitioner's methadone dosage in compliance with federal guidelines.[3] Lastly, Ms. Nelson testified that petitioner was

> extremely lacking in empathy for what her [child has] gone through. She considers herself to be a good parent without any apparent insight into what the [child has] gone through. She doesn't seem to have any remorse for her actions. She doesn't seem to be motivated to change.

A CPS worker testified that the DHHR recommended termination of petitioner's parental rights due to her continued drug abuse. The CPS worker noted that petitioner had been involved in a prior case due to her drug abuse, and that she refused treatment beyond an outpatient program. The CPS worker testified that, while petitioner was attending the outpatient program, her drug screens revealed that her levels of methadone were "all over the place," insinuating that petitioner was not tapering her dosage as intended. The worker further testified that petitioner failed to acknowledge the extent to which her drug abuse affected the child and that petitioner minimized the situation that led to the petition's filing. Specifically, petitioner informed the worker that she

---

[2]The record indicates that the 2016 petition was filed against petitioner after she made several controlled drug sales to an undercover drug task force officer. On at least one occasion, B.M. opened the door and was present for the exchange.

[3]Methadone is a medication used to treat Opioid Use Disorder. Petitioner was prescribed methadone as part of her treatment in her outpatient program.

had not overdosed, but had passed out while doing some yard work. Following this testimony, the circuit court continued the hearing.

The circuit court reconvened the dispositional hearing in February of 2020. Petitioner presented the testimony of a worker with the outpatient treatment center where she claimed to have "been going to for years." The worker acknowledged that petitioner attended the treatment center off and on over the course of several years. She noted that, since October of 2019, petitioner had been compliant with treatment. Petitioner attended group and individual counseling at the treatment center; submitted to approximately nine drug screens, all of which were negative for substances except methadone; and began tapering her dosage of methadone. The circuit court once again continued the hearing following testimony.

The circuit court held the final dispositional hearing in March of 2020. The guardian presented the testimony of the child's behavior and emotional disorder teacher, who testified to the child's behavioral improvement following her removal from petitioner's care. The teacher testified that the child was placed in her classroom due to violent outbursts. In one instance, the child attempted to stab her teacher with scissors. She further testified that, after the child was removed from petitioner's care, her behaviors improved significantly, and she was able to be moved back to a general classroom. The teacher stated that moving a child back into a general classroom happens "[v]ery rarely." According to the teacher, moving B.M. to her aunt's care "changed her for the better." The teacher opined that the child was "functioning beautifully in a [general] third grade classroom. Her academics have soared. She hasn't had one violent outburst, she hasn't dropped one curse word, hasn't been rude, mean or had a tantrum . . . for probably about four months now."

In its April 8, 2020 dispositional order, the circuit court found that petitioner received "months and months" of services from CPS at various times over the years. Further, while petitioner "successfully" completed her improvement period in the 2016 case, she "was not able to maintain sobriety or a consistent, stable home for the minor child." Indeed, petitioner "has battled her drug addiction for over 17 years and she has been unable to maintain sobriety for a significant amount of time." The circuit court noted that, although petitioner attempted to participate in numerous rehabilitation programs, she never successfully completed one. According to the circuit court, petitioner's situation had not changed since her 2016 abuse and neglect case, the "same problems and issues are still present, and the minor child continues to suffer because of [petitioner's] behavior and lifestyle." Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. It is from the dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[4]The father voluntarily relinquished his custodial rights to the child. The permanency plan for the child is a legal guardianship by her aunt.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.[5] According to petitioner, she passed every court-ordered drug screen and every drug screen administered by her outpatient treatment program. Petitioner also attended every hearing, participated in a parental fitness evaluation, maintained employment and housing, and demonstrated her commitment to long-term recovery. Petitioner claims "[i]t is difficult to imagine what more [she] could have done" and contends that "had she been afforded the opportunity to participate in an improvement period, she would have done so fully and successfully." Petitioner further argues that the DHHR and the guardian erred in relying on the 2016 removal of the child to support their recommendations for termination of her parental rights in the instant case as she previously successfully completed her improvement period and regained custody of the child. She contends that, since the 2016 removal, she has maintained sobriety with the exception of the relapse resulting in the filing of the underlying petition.

---

[5]In support of her argument, petitioner states that there were no allegations of "overt abuse" against her in the petition; however, petitioner never raised any issue with the sufficiency of the petition below. Indeed, petitioner stipulated to the allegations contained in the petition. This Court has previously held "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we find petitioner is entitled to no relief in this regard. Additionally, petitioner takes issue with Ms. Nelson's qualifications and her ability to testify to parents affected by drug abuse, as well as her ability to perform general psychological evaluations. However, when the DHHR requested the circuit court qualify Ms. Nelson during the dispositional hearing below, petitioner responded that she had no objection to the qualification. Thus, we find that petitioner is likewise not entitled to raise this issue on appeal.

Lastly, petitioner suggests that Ms. Nelson expressed that she could not recommend reunification of petitioner and the child because petitioner was taking methadone, in violation of the Americans with Disabilities Act. This is simply inaccurate. At no point in the psychological evaluation report does Ms. Nelson opine that petitioner's use of methadone should preclude reunification. Moreover, during cross-examination, Ms. Nelson testified that she never purported such an opinion, stating "[i]t's not in my report, I did not say that. I would never say that." Therefore, this aspect of petitioner's argument is also without merit.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-adjudicatory improvement period. Petitioner was offered services designed to address her drug addiction both at the time of the child's birth and during the 2016 abuse and neglect proceedings. While petitioner completed her improvement period during the prior proceedings, she resumed abusing drugs and overdosed in her yard while the child was sleeping inside. Further, testimony at the dispositional hearing established that petitioner minimized her drug abuse and failed to acknowledge the effect her actions had on the child. Ms. Nelson testified that petitioner's prognosis for attaining minimally adequate parenting was "extremely poor." Ms. Nelson noted that despite the provision of services, petitioner "never benefited" from them and refused long-term treatment. Petitioner's psychological evaluation indicated that she lacked empathy for what her child went through, lacked any insight into what her child experienced, and showed no remorse for her actions. A CPS worker also testified at the dispositional hearing that petitioner failed to acknowledge her actions and claimed that she passed out from doing yardwork rather than overdosing on drugs. This Court has previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The evidence presented clearly demonstrates that petitioner failed to acknowledge the extent of her actions despite the provision of services on two prior occasions. Moreover, although petitioner states that she passed all her drug screens, we have held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Based on petitioner's failure to remedy her drug addiction after the receipt of several services and her lack of insight into her actions, we find no error in the circuit court's denial of her motion for a post-adjudicatory improvement period.

This evidence likewise supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

5

Clearly, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, petitioner continued abusing drugs despite the receipt of services on two prior occasions. During the proceedings below, petitioner failed to acknowledge the impact of her actions and denied the extent of her drug use. Petitioner claimed that she passed out while working on her yard instead of overdosing and, on another occasion, claimed that her relapse was a one-time event occurring after she purchased the heroin from "some guy" walking down the street. During her psychological evaluation, petitioner could not explain how her drug use affected her child. Moreover, petitioner refused long-term treatment, opting instead to continue with her intensive outpatient treatment program despite her failure to maintain sobriety while attending that same program over several years. While petitioner claims that she is successfully participating in an intensive outpatient treatment program and submitting negative drug screens, we have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Based on the foregoing, we find no error in the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. To the extent petitioner claims the circuit court should have imposed a less-restrictive alternative, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). In sum, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison